United States District Court,
Eastern District of New York,

James Kalamaras

Plaintiff,

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 11 2015 ★
LONG ISLAND OFFICE

Civil Complaint
USCA § 1983

—Against—

Nassau County; Nassau County
District Attorney's Office; Rick
Whelan, Chief of Nassau Organized
Crime and Rackets Bureau; Anne
Donnelly, Deputy Chief of Organized
Crime and Rackets Bureau; George
J. Smit, Assistant District Attorney
of Organized Crime and Rackets Bureau;
Nassau County Sheriff's Department.

Defendants.

Docket/Case No.:
CV-15 5441

Jury Trial Demanded?
Yes.

SEYBERT, J

LINDSAY, M.

Jurisdiction

This court maintains subject matter and
geographical jurisdiction since Plaintiff
complains of violations by defendants of
his United States Constitutional Rights
protected by the U.S. Constitution, and
since the acts alleged occurred in Nassau
County, New York.

<u>PARTIES</u>.

<u>PLAINTIFF</u>:

JAMES KALAMARAS (CC# 15002287)
NASSAU COUNTY JAIL,
100 CARMAN AVE
EAST MEADOW, NY. 11554


<u>DEFENDANTS</u>:

NASSAU COUNTY: EXECUTIVE BLDG, 1 WEST ST.
MINEOLA, NY. 11501

DISTRICT ATTORNEY'S OFFICE:
RICK WHELAN
ANNE DONNELLY
GEORGE J. SMIT
<u>ADDRESS</u>: 262 OLD COUNTRY RD, MINEOLA, NY. 11501

NASSAU COUNTY SHERIFF'S DEPARTMENT
<u>ADDRESS</u>: CIVIL BUREAU, COUNTY OFFICE BLDG, 240
OLD COUNTRY RD, MINEOLA, NY. 11501

✱ PLAINTIFF SUES ALL DEFENDANTS IN THEIR OFFICIAL
AND INDIVIDUAL CAPACITIES.

AS PLAINTIFF'S FIRST CAUSE OF ACTION, THE DEFENDANT NASSAU COUNTY AND THE NASSAU COUNTY COURT SYSTEM MAINTAINS AN UNLAWFUL POLICY, PROCEDURE AND CUSTOM, IN WHICH, THE UPON A PETITIONER FILING A PETITION FOR A WRIT OF HABEAS CORPUS, AS DID PLAINTIFF, AND SUCH IS FILED AT THE SUPREME COURT OF NASSAU COUNTY IN ORDER FOR PLAINTIFF TO OBTAIN JUDICIAL REDRESS FROM A JUDGE OTHER THAN HIS THE JUDGE HANDLING HIS CRIMINAL MATTERS, THE SUPREME COURT, IN VIOLATING PLAINTIFF'S CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW, UNLAWFULLY FORWARDED PLAINTIFF'S HABEAS CORPUS PETITION BACK TO NASSAU COUNTY COURT AND ADDRESSED IT TO JUDGE PHILLIP GRELLA. MEANWHILE, PLAINTIFF CITED JUDICIAL CORRUPTION, UNLAWFUL AGREEMENTS, AND POLICIES, AS WELL AS REQUESTED JUDGE GRELLA TO RECUSE HIMSELF FOR COMMITTING NEGLEGENT ACTS WHICH HAVE BEEN TARGETED AT PROLONGING PLAINTIFF'S INCARCERATION WHILE AT THE SAME TIME DENYING HIM REVIEW OF LEGAL ARGUMENTS IN HIS PETITION WHICH THE JUDGE KNOWS WILL RESULT IN DISMISSAL OF ALL CHARGES AND OBVIOUSLY RELEASE OF PETITIONER. PLAINTIFF HAS NOW WAITED TWO-MONTHS TO BE HEARD ON THIS PETITION.

## STATEMENT OF FACTS

1. PLAINTIFF WAS ARRESTED ON 4-14-15 BY SEVERAL FEDERAL AND LOCAL AGENTS, NAMELY THE DRUG ENFORCEMENT AGENCY, NASSAU COUNTY ARSON AND BOMB SQUAD, AND THE NASSAU COUNTY ORGANIZED CRIME AND RACKETS BUREAU.

2. THIS ARREST WAS SOLELY MADE POSSIBLE DUE TO A CONFIDENTIAL INFORMANT, AND NOW COOPERATING WITNESS FOR PROSECUTORS AGAINST THREE CODEFENDANTS. THE "CI" IS NICHOLAS BAIALARDO OF SELDEN NEW YORK.

3. AS A RESULT OF HIS (BAIALARDO'S) ARREST ON APPROXIMATELY MARCH 15, 2015 FOR SELLING TO UNDERCOVER FEDERAL AND LOCAL AGENTS, TWO LOADED ILLEGAL ASSAULT WEAPONS, A SUM OF HEROIN, AND ILLEGAL OXYCODONE PRESCRIPTIONS, MR. BAIALARDO IMMEDIATELY STRUCK A DEAL WITH INVESTIGATORS TO TURN-IN HIS ALLEGED ACCOMPLICES WHO ALLEGEDLY TORCHED A CARDIOLOGIST'S OFFICE OWNED BY DR. MARTIN HANDLER AT 38 NORTHERN BLVD, GREAT NECK, N.Y. ON FEBRUARY 25, 2015 AT APPROX. 8:20PM.

4. MR. BAIALARDO IMPLICATED JAMES CHMELA AND JAMES KALAMARAS, THE PLAINTIFF.

5. Note, that before arresting Baialardo, investigators had no evidence, no leads, and no suspects in the alleged arson. Plaintiff was solely implicated and arrested based on Baialardo's false statements which were made simply just to keep himself out of jail.

6. The arrest made major news headlines where Doctor Anthony J. Moschetto, Handler's estranged business partner, and also a board certified cardiologist, was not only charged with conspiring to have Handler's office torched, but is also charged with conspiring to kill Handler, and to have his wife assaulted.

7. A search of Moschetto's Sands Point, N.Y. mansion turned up a stockpile of illegal assault weapons, a grenade, dozens of knives, and enough ammunition to support a small army.

8. Plaintiff persistently proclaimed his innocence since day one, spoke to no one, did not waive his Miranda rights, and demanded, in writing, to appear at the grand jury to testify on his own behalf, pursuant to N.Y.S. Criminal Procedure Law § 190.50.

(2)

9. PLAINTIFF WISHED TO TELL A GRAND JURY, AND PRESENT WITNESS TESTIMONY AND/OR STATEMENTS, WHICH PLACE HIM SOMEWHERE OTHER THAN THE SCENE OF THE CRIME AT THE TIME IT WAS COMMITTED.

10. WITHIN 144 HOURS OF HIS ARREST, OR THE AFTERNOON OF APRIL 20, 2015, AT PRECISELY 12:40 PM, THE PLAINTIFF WAS ENTITLED TO A FELONY EXAM, OR IN THE ALTERNATIVE, HE WAS ENTITLED TO RELEASE ON HIS OWN RECOGNIZANCE PURSUANT TO NEW YORK CRIMINAL PROCEDURE LAW SECTION 180.80.
(SEE STENOGRAPHIC TRANSCRIPTS OF APRIL 20, 2015 - PM. - ATTACHED AS EXHIBIT      )

I. NY CPL §180. VIOLATIONS

11. THE "180.80" ISSUE BECAME THE SUBJECT OF EXTENSIVE ARGUMENTS ON APRIL 20, 2015, BY DEFENSE COUNSEL, THE COURT, AND ASSISTANT DISTRICT ATTORNEY OF ORGANIZED CRIME AND RACKETS BUREAU, GEORGE SMIT, ESQ.

12. THERE ARE ONLY A FEW REASONS WHY A FELONY EXAM MAY BE ADJORNED, NONE OF WHICH OCCURRED IN THESE PROCEEDINGS. THERE IS NO STATUTORY ALLOWANCE IN NEW YORK STATE FOR EITHER PROSECUTORIAL OR JUDICIAL WAIVER OF THE HEARING. [ALSO SEE PEOPLE V. HOGAN, 5 misc. 3d 151, 780 NYS 2d 883. [ROCHESTER CITY CT., 2004]]

17. ADDITIONALLY, THE RIGHT TO WAIVE A PRELIMINARY HEARING HAS BEEN VESTED SOLELY WITH A DEFENDANT. DEF. PLAINTIFF, UP UNTIL THIS POINT, HAS NOT WAIVED HIS RIGHT TO A PRELIMINARY HEARING, AND IN COURT ON THAT DAY, DEMANDED RELEASE DUE TO THE PROSECUTOR'S FAILURE TO AFFORD HIM A FELONY EXAM BY 12:40 PM ON 4-20-15, WHICH THE JUDGE ADMITS PLAINTIFF SHOULD HAVE BEEN RELEASED, IF NOT FOR AN UNLAWFUL POLICY.

18. WHAT TRANSPIRED AFTER PLAINTIFF'S REQUEST FOR RELEASE PURSUANT TO CPL 180.80, WAS THAT THE COURT REVEALED AND CONFIRMED THE EXISTENCE OF AN UNLAWFUL "POLICY" AND "AGREEMENT" BETWEEN THE NASSAU COUNTY COURT, THE NASSAU COUNTY LEGAL AID SOCIETY, & THE NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE, AND THE UNLAWFUL PRACTICE OF SUCH POLICY AND AGREEMENT.

19. IN THE STENOGRAPHIC MINUTES OF APRIL 20, 2015 PAGE 6, LINE 11, THE JUDGE STATES:

"SO WE HAD A DISCUSSION, AND I THINK YOU KNOW THAT MY VIEW IS THAT IF WE WERE IN THE HABIT IN THIS COUNTY OF JUST GOING BY THE STATUTE, THEN THE STORY OF THE (CPL) 180.80 WOULD BE VERY CLEAR, HE'S BEEN IN CUSTODY SINCE APRIL 14th AT 12:40, AND HIS 180.80 HAS RAN TODAY AT 12:40, IT WAS LAPSED."

16. Previously, the Judge admits that the court, and the DA's office, as well as Legal Aid Society, are NOT in the habit of following statutes, specifically §140.80 of the Criminal Procedure Law of New York.

17. The Judge then admits that Plaintiff's CPL §140.80 had expired on April 20, 2015 at 10:40pm, and that IF Nassau County and its Judicial Departments and Agencies followed the letter of the law rather than make off the record agreements concerning Plaintiff's freedom and liberty, WITH PARTIES THAT DID NOT INCLUDE PLAINTIFF, NOR HIS ATTORNEY, (Stephen Kunken, Esq.), then Plaintiff would have been released. Plaintiff, as a result, has suffered malicious prosecution and wrongful imprisonment by Defendant.

18. In violation of Plaintiff's 1st, 6th, 5th, 8th and 14th Amendment Rights to the United States Constitution, that did not happen, Plaintiff should have been released on 4-20-15, and would have remained at liberty until ~~xxxxxxxxxx~~ this current date in light of the CPL §190.50 violation claimed below.

19. In light of the existence of "the ~~xxxxxx~~ Agreement" and the "Policy Pursuant to that Agreement", (see Stenographic Transcripts, 4-20-15, P.M. Calendar, Exhibit, A, Page 6, line 17)

PLAINTIFF'S ENTITLEMENT TO EITHER RELEASE FROM CUSTODY, OR A FELONY EXAM UPON THE CHARGES HOLDING HIM, WAS CIRCUMVENTED AND UNLAWFULLY DENIED. PLAINTIFF COULD HAVE HAD ALL CHARGES DISMISSED AT SUCH A HEARING IN THIS CASE, WHERE THERE IS CLEAR EVIDENCE THAT PLAINTIFF WAS IN PORT JEFFERSON AT (N.Y.) THE TIME THE CRIME WAS COMMITTED - OVER 40 MILES AWAY FROM GREAT NECK, NY

20. THIS AGREEMENT BY DEFENDANTS COUNTY OF NASSAU, NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE, LEGAL AID SOCIETY OF NASSAU COUNTY WAS AN UNLAWFUL ACT, AGREEMENT AND POLICY BEING PRACTICED IN THE NORMAL COURSE OF THEIR DUTIES THAT ALL PARTIES ACTIVELY PARTICIPATED IN AND AGREED UPON FOR AT LEAST MORE THAN "14 YEARS", AND A "LONG-STANDING PRACTICE", WHICH SUCH PRACTICE WAS THE DIRECT AND PROXIMATE CAUSE OF PLAINTIFF'S IMPRISONMENT.

21. THE JUDGE ADMITS ON PAGE 7, LINE 1 THAT THE "DA CAN CHOOSE TO EITHER HAVE A FELONY EXAM... OR THEY PRESENT THE CASE TO THE GRAND JURY." AND "WHERE THERE'S A DEMAND [FOR A FELONY EXAM] THE CASE COMES TO MY PART AND THEN THERE'S AN AGREEMENT THAT THE CASE CAN BE ADJOURNED FOR TWO DAYS IF THE DEFENDANT WANTS TO DEMAND

(7)

A FELONY EXAM.... SO THE WAY IT WOULD PLAY HERE, MR. KUNKEN, YOU'VE DEMANDED THE EXAM NOW.....

YOU CAN DEMAND IT NOW ON HIS BEHALF, ... AND THEN THE PRACTICE HAS BECOME, AND THIS IS A VERY LONG-STANDING PRACTICE WHERE NOW THE CASE GETS ADJORNED FOR TWO DAYS AND THE PEOPLE HAVE TO HANDLE IT AS IF IT WERE THE NEXT TWO DAYS IS THE 180.80 SITUATION."

22. THE JUDGE THEN EXPLAINS, IN DETAIL, HOW ALL DEFENDANTS GO ABOUT CIRCUMVENTING PLAINTIFF'S RIGHTS TO A FELONY EXAM, AND HOW DEFENDANTS UNLAWFULLY PREVENT CPL 180.80 RELEASE FROM CUSTODY OF THE PLAINTIFF. THESE UNLAWFUL POLICIES AND PROCEDURES CLEARLY VIOLATE PLAINTIFF'S RIGHT TO DUE PROCESS OF LAW, HIS RIGHT TO A FAIR HEARING AS IS AFFORDED SIMILARLY SITUATED DEFENDANT'S IN NEW YORK STATE THEREBY VIOLATING ALSO HIS RIGHT TO EQUAL ~~PROTECTION~~ UNDER THE LAW.

23. THE JUDGE SPECIFIES THAT WHEN OR IF PLAINTIFF DEMANDS A HEARING, AS HE IS ENTITLED PURSUANT TO CPL §160.80, HIS REQUEST IS DENIED FOR NO VALID AND LAWFUL REASON, (BUT DEFENDANTS UNLAWFUL "AGREEMENT)," THEN, IN VIOLATING HIS REQUEST FOR RELEASE FROM CUSTODY

PURSUANT TO CPL 180.80 (BY VIRTUE OF THE D.A. NOT AFFORDING A PLAINTIFF THE DEMANDED FELONY EXAM), BASED, ONCE AGAIN, ON THE UNLAWFUL "AGREEMENT", THE CASE IS A UNLAWFULLY ADJOURNED FOR TWO DAYS, GIVING THE D.A. THE ABILITY TO PRESENT THE CASE TO A GRAND JURY WITHOUT HAVING TO AFFORD PLAINTIFF HIS CONSTITUTIONAL DUE PROCESS AND STATUTORY RIGHT TO SAID HEARING, AND PREVENTING PLAINTIFF'S REALL. RELEASE AS WELL, A DUAL BENEFIT FOR DEFENDANTS

24. FOR THE ABOVE INTENTIONAL, CALCULATED UNLAWFUL ACTS PURSUANT TO AN UNLAWFUL POLICY AND MALICIOUS PROCEDURE COMMITTED BY ALL DEFENDANTS, PLAINTIFF SEEKS PUNITIVE MONETARY DAMAGES AS INDICATED BELOW. PLAINTIFF ~~xxxxxxxxxx~~ ALSO ALLEGES THAT DEFENDANTS ALSO DENIED PLAINTIFF HIS RIGHT TO COUNSEL; (U.S. CONST. 6, 14th AMEND.)

## II. N.Y. CPL §190.50 VIOLATION OF PLAINTIFF'S RIGHT TO APPEAR AND TESTIFY AT THE GRAND JURY.

25. PLAINTIFF INDICATED, AS STIPULATED CLEARLY ON THE RECORD, (SEE STENOGRAPHIC MINUTES OF APRIL 15, 2015 - ARRAIGNMENT A, EXHIBIT A, PAGE TWO, LINE TWELVE) THAT HE WISHED TO APPEAR TO TESTIFY ON HIS OWN BEHALF, A RIGHT AFFORDED HIM PURSUANT TO NEW YORK CRIMINAL PROCEDURE LAW SECTION 190.50 (5)(a), AT THE GRAND JURY.

CPL §190.50

26.   CPL §190.50(5)(a) STATES THAT A DEFENDANT MUST BE INFORMED THAT A GRAND JURY PROCEEDING AGAINST A PERSON IS PENDING, IN PROGRESS OR ABOUT TO OCCUR.

CPL §190.50(5)(a) THEN ADDS IN PERTINENT PART THAT,

"WHEN A CRIMINAL CHARGE AGAINST A PERSON IS BEING, OR IS ABOUT TO BE, OR HAS BEEN SUBMITTED TO A GRAND JURY, SUCH PERSON HAS A RIGHT TO APPEAR BEFORE SUCH GRAND JURY AS A WITNESS IN HIS [OR HER] OWN BEHALF IF, PRIOR TO THE FILING OF ANY INDICTMENT HE [OR SHE] SERVES UPON THE DISTRICT ATTORNEY OF THE COUNTY A WRITTEN NOTICE MAKING SUCH REQUEST." (EMPHASIS ADDED)

27    ONCE AN ACCUSED SERVES SUCH NOTICE REQUESTING AN APPEARANCE BEFORE THE GRAND JURY, THE DA....

"MUST NOTIFY THE FORE[PERSON] OF THE GRAND JURY OF SUCH REQUEST, AND MUST SUBSEQUENTLY SERVE UPON THE APPLICANT, A NOTICE THAT [THE APPLICANT] WILL BE HEARD BY THE GRAND JURY AT A GIVEN TIME AND PLACE; SUCH PERSON MUST BE PERMITTED TO TESTIFY BEFORE THE GRAND JURY AND TO GIVE ANY RELEVANT AND COMPETENT EVIDENCE CONCERNING THE CASE UNDER CONSIDERATION. [CPL §190.50(5)(b)]

(10)

28. PLAINTIFF, AS IS EVIDENT, PLACED DEFENDANT DONNELLY AND GEORGE SMIT ON NOTICE THAT HE INTENDED TO APPEAR AND EXERCISE HIS STATUTORY AND CONSTITUTIONAL RIGHT TO TESTIFY AT THE GRAND JURY. (EXHIBIT B, MINUTES OF APRIL 15, 2015)

29. ON APRIL 22, 2015 A GRAND JURY HEARING WAS HELD IN THIS CASE. THE PROSECUTOR GEORGE SMIT PRESENTED THE PROSECUTIONS CASE, AND THE GRAND JURY VOTED TO INDICT PLAINTIFF.

30. DEFENDANT SMIT FAILED, PURSUANT TO STATUTE, TO NOTIFY THE FOREPERSON OF THE JURY OF PLAINTIFFS INTENT TO TESTIFY, FAILED TO SERVE PLAINTIFF NOTICE OF WHEN AND WHERE HE WILL BE HEARD, AND FAILED TO PHYSICALLY PRODUCE PLAINTIFF INTO THE GRAND JURY HEARING ROOM TO TESTIFY, IN VIOLATION OF THE 6th 5th AND 14th AMENDMENTS TO THE U.S. CONSTITUTION.

31. DEFENDANT SMIT, DEFENDANT NASSAU DISTRICT ATTORNEY'S OFFICE AND THE COUNTY OF NASSAU, HAVE, SINCE APRIL 20, 2015, WRONGFULLY IMPRISONED PLAINTIFF, HELD HIM ON EXTREMELY EXCESSIVE AND HARSH BAIL IN THE AMOUNT OF $500,000 BOND, WHILE PREVIOUSLY INFORMED OF THE FACT THAT PLAINTIFF HAS BEEN HOMELESS AND UNEMPLOYED, AND COULD NOT POSSIBLY MAKE SUCH BAIL TO SECURE HIS RELEASE. ALL DEFENDANTS HAVE VIOLATED PLAINTIFF'S 8th AMENDMENT RIGHT

(11)

TO LIFE, LIBERTY AND FREEDOM AND THE RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT THAT BEING HIS UNLAWFUL IMPRISONMENT DUE TO THE DEFENDANTS UNLAWFUL "POLICY" AND "AGREEMENT", AND DEFENDANTS DENIAL OF PLAINTIFF'S STATUTORY AND PROCEDURAL DUE PROCESS RIGHT TO TESTIFY AT HIS GRAND JURY HEARING ON APRIL 22, 2015.

32. PLAINTIFF WILL ALSO SHOW, AT TRIAL, THAT DEFENDANT SMITT AND NASSAU DISTRICT ATTORNEY'S OFFICE FAILED TO PRESENT EXCULPATORY EVIDENCE PROVING PLAINTIFF'S INNOCENCE AND ALIBI TO THE GRAND JURY ON APRIL 22, 2015, AN ADDITIONAL FACT PROVING THEIR MALICIOUS PROSECUTION OF PLAINTIFF.

33. SAID EXCULPATORY EVIDENCE WAS POSSESSED BY DEFENDANTS PRIOR TO THE GRAND JURY HEARING AND WAS INTENTIONALLY AND ILLEGALLY WITHHELD FROM THE JURY SIMPLY BECAUSE IT DIDN'T FAVOR THE PROSECUTIONS CASE, IN VIOLATION OF PLAINTIFF'S RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL.

34. PLAINTIFF POSSESSED A PROCEDURAL DUE PROCESS RIGHT PROTECTED BY N.Y.S. STATUTE THAT ENFORCES SUCH RIGHT, AND ENSURES THAT PROSECUTORS, LIKE THE DEFENDANTS, PRESENT EVIDENCE IN A DISINTERESTED, FAIR AND IMPARTIAL MANNER, AND ALSO THAT

(13)

THE DEFENDANTS PRESENT EVIDENCE WHICH ALSO PROVES PLAINTIFF <u>DID NOT</u> COMMIT THE CRIME.

35. INSTEAD, DEFENDANT SMIT SIMPLY ACTED AS IF HE NEVER OBTAINED THIS EVIDENCE THEREBY SECURING AN INDICTMENT. THIS ACT, IN CONJUNCTION WITH PROSECUTOR GEORGE SMIT REFUSING TO PRODUCE PLAINTIFF TO TESTIFY BEFORE THE GRAND JURY, DIRECTLY AND UNLAWFULLY HAS CAUSED PLAINTIFF'S WRONGFUL AND UNLAWFUL IMPRISONMENT TO THE PRESENT DATE, IN VIOLATION OF HIS 1ST, 8TH, 6TH, 5TH AND 14TH AMENDMENT RIGHTS TO THE U.S. CONSTITUTION. DEFENDANT SMIT AND DONNELLY INTENTIONALLY, AND WITH MALICIOUS INTENT, PLAYED AN AUDIO TAPE TO THE GRAND JURY WHICH WAS HEARSAY, FURTHER VIOLATING PLAINTIFF'S U.S. CONSTITUTIONAL RIGHTS. <u>RELIEF</u>

1. PLAINTIFF SEEKS COMPENSATORY DAMAGES IN THE AMOUNT OF $10,000 PER DAY OF WRONGFUL IMPRISONMENT FROM DEFENDANT NASSAU COUNTY AND NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE. THE FIRST DAY OF DAMAGES BEING APRIL 20, 2015, AND CONTINUING TO ACCRUE TO THE PRESENT DATE, AND UNTIL PLAINTIFF IS RELEASED FROM CUSTODY OF NASSAU COUNTY JAIL.

2. PLAINTIFF SEEKS PUNITIVE DAMAGES FROM EACH DEFENDANT IN THE AMOUNT OF $500,000 EXCEPT FOR COUNTY OF NASSAU AND THE NASSAU DISTRICT ATTORNEY'S OFFICE. FOR THESE DEFENDANTS PLAINTIFFS SEEKS 10 MILLION DOLLARS FROM EACH.

(12)

PLAINTIFF HAS MADE NO PREVIOUS REQUESTS FOR THE
RELIEF SOUGHT HEREIN.

WHEREFORE, PLAINTIFF RESPECTFULLY SEEKS THE
RELIEF SOUGHT HEREIN, BY WAY OF JURY
TRIAL, AND TO BE COMPENSATED FOR VIOLATIONS
OF HIS U.S. CONSTITUTIONAL RIGHTS AS WELL AS
HIS NEW YORK STATE PROCEDURAL AND STATUTORY
DUE PROCESS RIGHTS, AND FOR SUCH OTHER AND
FURTHER RELIEF AS THIS COURT DEEMS PROPER.

DATED: AUGUST                    RESPECTFULLY,

                                 X _____
                                 JAMES KALAMARAS

SWORN TO BEFORE ME THIS
1 DAY OF SEPT, 2015.             PRO-SE PLAINTIFF.

_____
NOTARY

CARMINE PULGRANO
Notary Public, State of New York
No. 01PU6094168
Qualified in Nassau County
Commission Expires June 16, 20___ 19



**MADELINE SINGAS**
ACTING DISTRICT ATTORNEY

# OFFICE OF
# THE DISTRICT ATTORNEY
### NASSAU COUNTY

ORGANIZED CRIME & RACKETS BUREAU
RICK WHELAN, CHIEF
ANNE T. DONNELLY, DEPUTY CHIEF

## FACSIMILE TRANSMISSION SHEET

TO: Steven Bornwell Esq.

FAX #: 742-3325
TELEPHONE #:

FROM: George Smit

DATE: 6/23/15

RE: Kalamaras, James   Part 9L 4/17/15 minutes
Part 9L 4/20/15 A.M. minutes

**TOTAL # OF PAGES (Including this cover sheet):**

AS REQUESTED:              FOR YOUR INFO:

PLEASE CALL ME:                (    )

COMMENTS OR OTHER ACTION TO BE TAKEN:

## CONFIDENTIAL DISTRICT ATTORNEY FACSIMILE COMMUNICATION

### IF YOU DO NOT RECEIVE ALL PAGES, CALL:
### (516) 571-2553
### OUR FAX MACHINE NUMBER IS (516) 741-7550

The information contained in this facsimile message, and any and all accompanying documents, constitutes confidential information. This information is the property of the Nassau County District Attorney's Office. If you are not the intended recipient of this information, any disclosure, copying, distribution, or the taking of any action in reliance on this information is strictly prohibited. If you received this message in error, please notify us immediately at the above number to make arrangements for its return to us.

1

```
 1    STATE OF NEW YORK:        NASSAU COUNTY
      COUNTY COURT:            PT 89
 2
      ----------------------------------------x
 3    THE PEOPLE OF THE STATE OF NEW YORK

 4                                            2015NA007659

              -against-
 5

 6

 7    JAMES KALAMARAS,

                      Defendant.
 8    ----------------------------------------x
                                   April 20, 2015
 9                                 252 Old Country Road
                                   Mineola, New York
10

11    B E F O R E:

12          HONORABLE JUDGE ERICA PRAGER
            ACTING COUNTY JUDGE
13

14    A P P E A R A N C E S:

15          HON. MADELINE SINGAS
            NASSAU COUNTY DISTRICT ATTORNEY
16          99 Main Street
            Hempstead, New York 11550
17          BY:  George Smit, ADA

18
            Stephen L. Kunken, Esq. (18B)
19          6165 Jericho Turnpike
            Jericho, New York 11725
20

21                              MIGUEL M. RIVERA
                                OFFICIAL COURT REPORTER
22

23

24

25
```

2

1          THE CLERK:  For the record, Number 35, James

2     Kalamaras.  That's you, sir?

3          THE DEFENDANT:  Sir yes, sir.

4          MR. SMIT:  For the People, Assistant District

5     Attorney George Smit.

6          Good afternoon, your Honor.

7          MR. KUNKEN:  Good afternoon,  Your Honor.  You

8     assigned me.  I accept the assignment.  Stephen Kunken,

9     k-u-n-k-e-n, 6165 Jericho Turnpike, Commack, New York 11725.

10         I don't know if you need me to clear up the issue

11    of Mr. Kalamaras and his ability to afford a private

12    attorney because when I went down to see him during the

13    break during the lunch hour after you assigned me, I then

14    had a discussion and he indicated that he gave information

15    to the arraignment Judge about money that he was earning

16    when he was employed, but that he hasn't been employed for

17    sometime, and that he's not earning any money and he's

18    not -- he's receiving public assistance for the last six

19    months.  As you know, he's just advised me again, and has no

20    resource in obtaining an attorney.  I don't know if you need

21    to clear that up.

22         THE COURT:  No.  I am glad that you raised the

23    issue.  Thank you, Mr. Kunken.

24         I was going to address it.  Your client before you

25    were on the scene did tell me that he was on public

5

1          The People are more than glad to put this case into

2     the grand jury, and if that's what they wish, we will be

3     glad to do it.

4          The fact that he didn't come over on Friday the

5     People believe is because he refused sick.  That time should

6     not be charged against the People.  Furthermore --

7     withdrawn, your Honor.

8               MR. KUNKEN:  May I respond briefly?

9          Judge, there is a misassumption on the part of the

10    People that the defendant has some affirmative duty to

11    request his exam.

12          As we argued before off the record, there's no

13    affirmative duty.  The district attorney may sit here,

14    especially in Nassau County, and wish or hope or expect or

15    in some other way not prepare to put the case into the Grand

16    Jury because it's usually adjourned, etcetera, etcetera.

17    But none of that happened in this case.

18          For whatever reason that Mr. Kalamaras was not

19    brought over from the jail has nothing to do with what we

20    are doing here today.

21          There was nothing on the record from Friday which

22    his counsel or by his inability to be here that was

23    constituting a waiver of his request for a felony hearing.

24    So, I just think we have to be clear, and I believe that the

25    Court would accept my -- the statutory position, there is no

Case 2:15-cv-04649-JS-ARL   Document 10   Filed 09/11/15   Page 21 of 31 PageID #: 94

6

1    affirmative responsibility on the defendant to demand a

2    hearing.

3         MR. SMIT:  Your Honor, the People believe that the

4    defendant's thwart his ability to address this issue by not

5    coming over on Friday.  He did so by claiming he's sick.  It

6    prevented us from having this discussed this past Friday for

7    him to be assigned counsel, if that's what the Court chose

8    to do based on the $10,000 a month that he makes as a tattoo

9    artist.  And that time in between at a minimum, the 15th and

10   17th, should not be charged to the People, your Honor.

11        THE COURT:  So we had a discussion, and I think you

12   know that my view is that if we were in the habit in this

13   County of just going by the statute, then the story of the

14   180.80 would be very clear.  He's been in custody since

15   April 14th at 12:40, and his 180.80 has ran today at 12:40.

16   It was lapsed.

17        The issue here is that there is an agreement that

18   exists -- that has existed for I don't even know how many

19   years because it predates me, and I've been a judge for

20   14 years, and so I know it predates my run in the County.

21   But that agreement between Legal Aid and the DA's office is

22   still abide by.  And what that agreement provides and my

23   understanding of that agreement and part of the policy

24   pursuant to that agreement has evolved into the handling of

25   these matters outside of the statute.  And so what involves

1        is that when there is a demand made, the DA can choose to

2        either have the felony exam because the defendant is in for

3        a felony, or they present the case to the Grand Jury.  And

4        one of the other things that has evolved here is there is no

5        representation, or where there's a demand the case comes to

6        my part and then there's an agreement that the case can be

7        adjourned for two days if the defendant wants to demand a

8        felony exam.  So the way it would play here, Mr. Kunken,

9        you've demanded the exam now, or had the defendant come on

10       Friday he could have demanded it on Friday.

11             You can demand it now on his behalf, and then the

12       practice has become, and this is a very long-standing

13       practice where now the case gets adjourned for two days and

14       the People have to handle it as if it were the next two days

15       is the 180.80 situation.

16             MR. KUNKEN:  If I could respond, Judge.

17             It is my understanding, and I know we have had this

18       discussion before on a different case, but in similar

19       circumstances, it's my understanding that the Legal Aid

20       Society's position has been in arraignment, Number 1, never

21       to waive a defendant's right to a felony exam.  They never

22       do it and, therefore, I do not believe it was done in this

23       case.  That they always indicate that the defendant wishes

24       to testify in the Grand Jury which puts the district

25       attorney on notice of that fact.  And that when the case is

06/23/2015  09:58   5167417550          NASSAU DA                    PAGE  14/21
Case 2:15-cv-04649-JS-ARL  Document 10  Filed 09/11/15  Page 23 of 31 PageID #: 96

8

1      adjourned, it's not adjourned at the request of the Legal

2      Aid Society.  That's my understanding.  So it may have been

3      an administrative adjournment.  But, once again, if you are

4      saying that it's an affirmative responsibility on the part

5      of defendant --

6          THE COURT:  I am not saying that it's an

7      affirmative responsibility.  What I am saying is what will

8      happen in this case is the defendant told the arraignment

9      Judge of his financial situation, that being that he makes

10     10,000 a month.  As per the statute, she instructed him to

11     retain and adjourned it.  She adjourned the case until the

12     17th.  The defendant was no show on the 17th, which was

13     Friday, and so everything got put into a holding pattern.

14         We adjourned the case from Friday until today so

15     that hopefully the defendant would appear and we could

16     assess what's going on; whether he's made any effort to hire

17     an attorney, whether an attorney was coming today, or what

18     the situation was.  But I am not suggesting it was an

19     affirmative demand that needs to be made.  I understand the

20     statute.  What I am saying is, one, the policy and practice

21     has lapsed into something.  This whole issue has moved into

22     something very different than what it is contemplated in the

23     180.80 statute.

24         MR. KUNKEN:  Then, if I could just say, Judge, the

25     issue of counsel, I agree, could be addressed if this was a

1    speedy trial issue.  The statute specifically discusses a

2    tolling of the speedy trial statute where the defendant

3    needs time to get an attorney or doesn't have an attorney.

4    But that same statute does not apply in 180.80 so it has

5    nothing, whether I am going to get this lawyer or I am going

6    to get this lawyer.  As I said, the district attorney may be

7    sitting here hoping and expecting something to happen but

8    that's not the same as a waiver of the right.  And so I

9    respectfully indicate to the Court that there is nothing

10   here to indicate that the statute time period was in any way

11   consented to, requested by, or caused by any of the

12   defendant's actions.

13          The representation of an attorney is a totally

14   aside the point.  They might be sitting, waiting for

15   something to happen, wait for a waiver to happen, but that's

16   not the defendant's burden, and it didn't happen in this

17   case.  That's my position.

18          THE COURT:  You know, we see this quite often where

19   a defendant, where a case gets adjourned to a court date and

20   then the defendant doesn't appear, and then the case gets

21   put into a holding pattern.  And now the defendant appears

22   and wants to claim a 180.80 release and so I am not -- by

23   the way, now we are talking hypothetically.  We are not

24   talking hypothetically, but I am saying, I think if I am

25   going to handle cases where the agreement is in place, then

1      I need to enforce the agreement all the time and, otherwise,

2      we are going to go back into a straight 180.80

3      interpretation.  It's very clear, and that's it.  And then I

4      will ignore the agreement.

5           MR. KUNKEN:  Right.  If I can just say --

6           THE COURT:  And that's fine, but then what happens

7      is we have a situation like this where the defendant is a

8      no-show on the date the case is adjourned.  He hasn't hired

9      an attorney despite the instructions on what to do, and then

10     shows up on Monday and says, "All right.  Forget about that

11     $10,000 a month".  Then, "What I told the arraignment Judge,

12     I am on public assistance.  Please give me a lawyer, and I

13     want a 180.80 release," where we would've handled all of

14     this on Friday had he shown.

15          MR. KUNKEN:  We are making an assumption that he

16     somehow had the ability to get himself to court on Friday.

17     You can't make that assumption, Judge.  There are numerous

18     reasons that I have seen in the past.  I have gone back to

19     the jail and spoken to people.  They refused to come over.

20     "What do you mean I refused to come over?  They never called

21     me".  So you can't make any assumption that the

22     transportation unit of Nassau County jail did not bring him

23     over here.  I think that's besides the fact.  The agreement

24     that we are talking about was not any agreement that I had

25     with this Court or with the DA's office.  I don't believe

Case 2:15-cv-04649-JS-ARL  Document 10  Filed 09/11/15  Page 26 of 31 PageID #: 99

1        it's an agreement that any 18b lawyer has in every case.

2        It's individually, as far as I am concerned.  I understand

3        it was the policy and situation here with the DA.

4               THE COURT:   Well, he was represented by Legal Aid

5        up until -- well, during arraignment.

6               MR. KUNKEN:  And my point to you is Legal Aid's

7        position, as it is my understanding, is to never waive and

8        never consent to postponing the felony hearing, and to my

9        knowledge they didn't do it in this case.  So, you know, the

10       District Attorney's office is basically saying, "it's our

11       policy if they want a felony hearing we will put it into the

12       Grand Jury".  All right.  That's their policy.  I have no

13       control over that.

14              THE DEFENDANT:  May I speak, your Honor, briefly?

15              THE COURT:  You can.  It's never really good --

16              THE DEFENDANT:  Just based on the amount of money

17       and what I stated that I perceived the question to refer to

18       when I am working, how much money do I make per month?  You

19       know, when they were asking how much money I make per month.

20       I didn't understand the question.  And the way I perceived

21       it was that I was being asked when I am employed because I

22       was under the assumption for the last three years I have

23       been on Medicaid.  For the last two years I have collected

24       food stamps.  And for the last nine months I collected

25       public assistance cash.  So I was under the assumption that

1    Wyndage. I stayed a week in Yapank, Middle Island. I am

2    sorry. I stayed a week or two here and there, all over Long

3    Island. I was at 960 West Main Street, and in River Head at

4    CHH Community Housing. I stayed there. I was transferred

5    there to TLC. I was transferred then, you know. I was

6    informing them.

7            MR. KUNKEN: She is got the picture.

8            THE DEFENDANT: And I did not waive any right to a

9    Grand Jury Hearing, and I did not, you know, intended for

10   anyone to -- I did not attempt to thwart the district

11   attorney's efforts and to bring about a grand jury or a

12   felony exam. I was not called to court that last Friday.

13   No one called my name to appear in court. No one called or

14   told me to wake up to go to court. I was in the 72-hour

15   lockdown and mental observation tier.

16           THE COURT: Okay. Do you want to be heard on

17   the issue of 180.80 versus the two-day adjournment pursuant

18   to the agreement?

19           MR. SMIT: Either, your Honor.

20           As the Court noted it earlier, this has been a

21   longstanding practice. To change the practice now, and for

22   the People to indict similar situated defendant, let's say

23   Mr. Kalamaras, who created a two-tier system, that would

24   have adverse impact.

25           THE DEFENDANT: I am indigent, your Honor.

1        MR. SMIT:  For those reasons, the People's policy

2     and practice procedure and custom between the Nassau County

3     District Attorney's office and Legal Aid Society should be

4     adhered to in this case.  And that in fact the two days

5     between arraignment and when the defendant was informed to

6     retain his own counsel, which counsel could have appeared on

7     the 17th without the defendant being here, should not be

8     charged and tolled on the People inasmuch as the People did

9     not believe it would be appropriate to release the defendant

10    pursuant to 180.80.

11        THE COURT:  When the Judge in arraignment

12    instructed you to retain your own attorney, did you make any

13    effort to retain your own attorney?

14        THE DEFENDANT:  Yes, I did, your Honor.  I just had

15    not been able to due to the fact I have no funds.  I

16    attempted to call an old attorney that I used in the past,

17    and I was going to ask him to take the case pro bono.

18        THE COURT:  How come you didn't come to tell me

19    this morning when I asked about the representation?

20        THE DEFENDANT:  Because we discussed I was on

21    public assistance.  I was going to go for --

22        THE COURT:    That's true.

23        THE DEFENDANT:  I apologize.

24        THE COURT:    You did tell me that.  That's true.

25    I find good cause for the People to present the case in the

1    Grand Jury pursuant to the agreement and the practice that

2    has been in place.  So the 180.80 application is denied

3    today.  And I know you are not making a demand.  I know your

4    position, Mr. Kunken.  You are not making a demand.  You are

5    just continuing what you perceived to be as the defendant's

6    180.80, right?

7            MR. KUNKEN:  Correct.

8            THE COURT:  So then the agreement there would kick

9    in an the DA would have two days to present it to the Grand

10   Jury.  So the case will come back Wednesday, April 22nd.

11           MR. KUNKEN:  So it's here, felony exam, on

12   Wednesday the 22nd?

13           THE COURT:    Correct.

14           MS. LIPTON:  9P?

15           THE CLERK:  Yes.

16           MR. KUNKEN:  9P.  Thank you, Judge.

17           THE DEFENDANT:  Thank you, your Honor.

18               * * * * * * * * * * * * * * * * * * * * *

19   Certified to be a true and accurate copy of my stenograph notes.

20

21

22

23   _____

24                    Miguel M. Rivera
                     Official Court Reporter

25

1

1    DISTRICT COURT OF NASSAU COUNTY

2    FIRST DISTRICT:   ARRAIGNMENT A

3    - - - - - - - - - - - - - - - - - - - -X

4    THE PEOPLE OF THE STATE OF NEW YORK

5

6

7             -against-            Docket #:
                                     2015NA007659

8    JAMES KALAMARAS,

9

10    - - - - - - - - - - - - Defendant.
                        - - - - - - -X
                        99 Main Street

11                        Hempstead, New York 11550
                        April 15, 2015

12

13    B E F O R E:          HON. DARLENE HARRIS,
                        District Court Judge

14

15

16    A P P E A R A N C E S:

17

18    For the People:      MADELINE SINGAS, ESQ.
                        Acting Nassau County D.A.

19                        BY:  GEORGE J. SMIT, ESQ.
                        BY:  ANNE DONNELLY, ESQ.

20                            Ass't District Attorneys

21    For the Defendant:   THE LEGAL AID SOCIETY
                        40 Main Street

22                        Hempstead, New York 11550
                        BY:  JANA MCNULTY, ESQ.

23

24

25                        CATHERINE P. MURPHY
                        Official Court Reporter

2

1        COURT CLERK:  Page 1, number 3, James

2   Kalamaras.

3        MS. MCNULTY:  If I may have a moment to

4   review the paperwork.  For the defendant, Jana

5   McNulty for the Legal Aid Society of Nassau

6   County..

7        MR. SMIT:  George Smit, Assistant District

8   Attorney Organized Crimes and Rackets.

9        MS. MCNULTY:  Waive public reading of the

10   felony complaint.  Ask that the case be

11   adjourned for conference.

12        Serving written notice of my client's

13   intent to testify before the Grand Jury

14   pursuant ot 190.50.  I'm also handing up to the

15   Court, a notice of appearance and I'm asking

16   that my client be screened for 18B from the

17   bench.

18        THE COURT:  Sir, do you own a home?

19        THE DEFENDANT:  No ma'am.

20        THE COURT:  Are you employed?

21        THE DEFENDANT:  Yes.

22        THE COURT:  Where at?

23        THE DEFENDANT:  I work as a tattoo artist.

24   I'm self-employed.

25        THE COURT:  How many people in your